In the Matter of UDC HOMES, INC., et al., Debtors.

Bankruptcy No. 95–558 (HSB).

United States Bankruptcy Court, D. Delaware.

Dec. 6, 1996.

John Sabl, Sidley & Austin, Chicago, IL, for Financial Advisor for the Debtors.

Ramsey Frank, Donaldson, Lufkin & Jenrette, Securities Corporation, New York City, Financial Advisor for the Debtors.

David A. Preiser, Managing Director, Houlihan, Lokey, Howard & Zukin, Inc., New York City, Financial Advisor to The Official Unsecured Creditors Committee.

Anthony W. Clark, Skadden Arps Slate Meagher & Flom, Wilmington, DE, for Debtors.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Chief Judge.

In this Chapter 11 case, Donaldson, Lufkin & Jenrette Securities Corporation, and Houlihan Lokey Howard & Zukin have each filed applications for approval of compensation and reimbursement of expenses. A hearing on these applications was held on October 2, 1996. This is the Court's Opinion on these applications, each of which is a core matter. 28 U.S.C. § 157(b)(2)(A).

### I. *Facts*

#### A. *Pre–Petition Events*

UDC Homes, Inc. is a designer, builder, and marketer of single family move-up and retirement homes. During the Fall of 1994, and continuing through May 1995, UDC experienced increasing liquidity problems. To address its financial problems, UDC considered a business combination transaction premised on the purchase by a third party of all UDC's outstanding equity. UDC retained Donaldson, Lufkin & Jenrette Securities Corporation to help accomplish this goal.

Initially, a deal was contemplated with AEW Partners, L.P., a company that provides real estate investment and asset management services to institutional investors. Exclusive negotiations with AEW continued through mid-February 1995. After that time, however, UDC expanded its discussions beyond AEW to other potential investors. Major creditors of UDC also participated in these negotiations. On May 1, 1995, UDC and AEW entered into a non-binding letter of intent. UDC contemplated a pre-planned bankruptcy filing centered on the transaction with AEW.

On May 10, however, DMB Property Ventures Limited Partnership, a diversified investment company with a substantial real estate portfolio and active real estate development operations, proposed a competing transaction to UDC. DMB's proposal was substantially equivalent to AEW's proposal with respect to economic terms, and was substantially better with respect to closing conditions. UDC commenced substantive negotiations with DMB, and on May 16, entered into a definitive stock purchase agreement with DMB. The next day, UDC Homes, Inc. filed its Chapter 11 petition. UDC filed a plan of reorganization on May 22, 1995, only five days later. This plan was based upon the DMB transaction.

Initially, in late 1994, UDC had contemplated that any combination transaction would include a distribution to equity classes. However, because of UDC's worsening financial condition, that concept was abandoned. A liquidation analysis performed by Donaldson, Lufkin & Jenrette showed that, as of September 30, 1995, unsecured claimants would receive approximately nine cents on the dollar, and that equity interests would receive nothing. UDC's filed plan provided that old equity interests would receive no distribution.

#### B. *Post–Petition Events*

On July 12, 1995, this Court approved the application of UDC to employ Donaldson, Lufkin & Jenrette Securities Corporation as its exclusive financial advisor to provide merger and acquisition and restructuring services. The application referred to a prior engagement letter dated July 20, 1994, as amended on March 20, 1995, and May 1, 1995. This engagement, as amended, provided that UDC would pay DLJ a total fee of

$3.75 million upon the consummation of the restructuring and sale of the Debtor ("the restructuring fee"), with monthly fees in the amount of $100,000.00 to be paid to DLJ. The paid monthly fees were to be credited against the total of $3.75 million. Pre-petition, UDC paid DLJ a total of $900,000.00, and post-petition, UDC paid DLJ a total of $600,000.00.

Certain preferred shareholders were unhappy with their treatment under UDC's filed plan, and requested the appointment of an official committee to represent their interests in the Chapter 11 case. On July 5, 1995, the United States Trustee appointed an official committee of preferred shareholders. That committee then applied to this Court to employ the financial advisory firm of Houlihan Lokey Howard & Zukin (HLHZ) at the rate of $75,000.00 per month. That application was submitted with a form of order *nunc pro tunc* to July 5 that provided "HLHZ may seek compensation in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the applicable Federal Rules of Bankruptcy Procedure, the rules of this Court, and such procedures as may be fixed by order of this Court." Docket no. 407B at 2. This Court inserted a reference to Order No. 27 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, and signed the modified order. The equity committee also obtained approval for the employment of legal counsel.

On August 3, 1995, UDC filed its second amended plan. The second amended plan differed from the first plan in that certain financial concessions were made to a group of subordinated convertible noteholders. That plan continued to be centered upon the terms of the stock purchase agreement between UDC and DMB. Pursuant to the second amended plan and the stock purchase agreement, DMB would make a cash investment of $108 million in reorganized UDC in exchange for all the new common stock of UDC, as well as subordinated unsecured notes in a face amount of about $30 million that the reorganized UDC would issue. The second amended plan still did not contemplate any distribution to preferred or common stock interests.

Following its formation, the equity committee took the position that equity interests should receive a distribution. UDC maintained that, given DLJ's valuation of the company, no distribution was appropriate under the absolute priority rule. Up through mid-August, the equity committee took an active role in the Chapter 11 case, and took a position quite adverse to UDC on various Chapter 11 matters, including pursuing a termination of UDC's exclusivity rights. *See generally,* Docket no. 540 at 37 (listing some of the activities of the equity committee). By late July 1996, UDC was upset at the scope of the work that the equity committee professionals were performing. UDC believed that because of, among other things, the nature of UDC's business and liquidity needs, it was essential for UDC to reorganize promptly. UDC further believed that the equity committee's only proper role was to defend against a contemplated cram-down hearing at confirmation. UDC filed a motion asking this Court to significantly restrict the scope of the equity committee's authority. Docket no. 434A. In mid-August, however, before that restriction motion was ever heard, UDC and the equity committee settled their differences through an addendum to the second amended plan. UDC's restriction motion was withdrawn.

Pursuant to the addendum, UDC created a trust consisting of $3,000,000.00 in subordinated notes for the benefit of old prime preferred stock interests. The addendum estimated this recovery to be approximately 2.67%. The corresponding addendum to the second disclosure statement stated that "there is currently no trading market for the ... Subordinated Notes." Docket no. 568 at 7. Pursuant to the addendum, two other classes of old equity continued to receive no distribution. *Id.* The addendum also set forth certain concessions by UDC relating to fee applications that would be filed by the professionals of the equity committee, and in particular, that UDC would not object to the fee applications of HLHZ.

The second amended plan, as supplemented by this addendum, was confirmed on Octo-

ber 3, 1995, and was consummated in November 1995. Pursuant to the plan, secured creditors and trade creditors received 100% recovery. The remaining unsecured creditors, and the prime preferred shareholders were impaired, but received consensual distributions as discussed above. Thereafter, DLJ, HLHZ, and every other professional person seeking compensation from the estate filed their compensation and expense applications.

Initially, the applications were reviewed by a fee auditor, and following the informal response procedures ordered by this Court, applications with reduced compensation and expense requests were noticed for an omnibus fee application hearing. Docket No. 903. At that hearing, the Court considered and approved fee and expense amounts for all those professionals, except for DLJ and HLHZ. The Court deferred decision on the applications of these two professional persons.

The approved fees and expenses for the law firms representing the equity committee totaled $386,882.50.

II. *Discussion of the Compensation Request of Donaldson, Lufkin & Jenrette*

Donaldson, Lufkin & Jenrette Securities Corporation filed an application seeking $2,125,000.00 in compensation and $42,993.11 in reimbursement of expenses. Docket no. 810A. The application explains that DLJ believes it is entitled to the $3.75 million restructuring fee as contemplated by the amended letter agreement. DLJ then subtracts both the $900,000.00 and $600,000.00 previously paid amounts from the overall amount to arrive at an unpaid restructuring fee amount of $2.25 million. DLJ further explains in its application that it agreed with DMB to cap its unpaid restructuring fee request at $2,125,000.00. Thus, DLJ reduced its fee request to this amount in its application.

Following the informal response procedures, DLJ agreed to reductions in its compensation and expense requests to address concerns of the fee auditor. This application, as reduced, was noticed for the October 2 hearing. The United States Trustee filed an objection relating primarily to expenses. On October 2, DLJ announced that it had resolved that objection through a further reduction. Thus, at the fee and expense application hearing, the Court was asked to approve compensation of $2,110,000.00, and reimbursement of expenses of $4,924.00 for services performed from May 17, 1995 through October 31, 1995.

■ As to the expense request of $4,924.00, the Court finds this reduced amount reflects actual and reasonable expenses properly reimbursable from UDC, and the expense request will be approved.

As to the compensation request, the first issue the Court must address is the dollar amount under review, because the amount is not $2,110,000.00 as suggested by DLJ at the October 2 hearing.

While DLJ is correct that the $900,000.00 it received prior to UDC's bankruptcy is not subject to Court review, the assertion that the monthly payments it received during the Chapter 11 case are not subject to Court review is wrong. Although this Court approved UDC's (continued) employment of DLJ, it reserved the decision on the appropriateness of the $100,000.00 per month payments, and the overall fee of $3.75 million. Specifically, at the July 12, 1996 hearing on DLJ's employment, the Court stated:

> DLJ shall receive a payment of $100,000.00 payable on the first business day of each month. DLJ's monthly payments and any expense reimbursements it receives from UDC will be *subject to review* by the fee auditor that will be retained in this case *and by this Court.*

> Now, no other fee is approved at this time. However, DLJ may renew its request for success, bonus, additional fee, whatever you want to call it, at a more appropriate and much later time in these Chapter 11 proceedings.

Docket no. 408C, at 105–106 (emphasis added). Thus, the amount of compensation subject to review is $2,710,000.00, not $2,110,-

000.00.[1]

■ The court must next determine whether this amount is "reasonable compensation for actual, necessary services." 11 U.S.C. § 330(a)(1)(A). In 1994, the Third Circuit Court of Appeals issued its Opinion in *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833 (3d Cir.1994). As set forth in that Opinion, a professional has the burden to submit a fee application grounded in complete, coherent information, and with enough detail to enable the Court to properly conclude that the requested compensation is reasonable. *Id.* at 845. The Third Circuit further held that the basis for that requested compensation should be based upon a market rate—what that professional would charge and collect from its client in a similar non-bankruptcy context. *Id.* at 849.

Section 330(a) of Title 11 further establishes relevant factors in determining whether requested compensation is reasonable, including:

(A) The time spent on such services;

(B) The rates charged for such services;

(C) Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A).[2]

In its application and at the October 2 hearing, DLJ detailed how the success of the UDC case was in substantial part due to the efforts of DLJ:

1. DLJ evaluated the strategic, financing and structural alternatives of the company.

2. DLJ prepared financing or offering materials.

3. DLJ solicited prospective purchasers.

4. DLJ led the auction process.

5. DLJ was instrumental in executing the strategy which culminated in the DMB acquisition.

6. DLJ prepared the terms of the DMB transaction.

7. DLJ led the plan negotiations and drafted the plan treatment of the classes.

Docket no. 810A at 4; docket no. 979 at 42.[3] DLJ fully satisfied the terms of its engagement agreement.

The compensation DLJ seeks for these and other services is not based upon a monthly fee, and it is not based on a monthly fee plus a bonus fee. The compensation request is based upon a restructuring fee concept. This is a compensation concept that certain financial advisors typically agree to in merger and acquisition or restructuring transactions work performed outside of bankruptcy. In such a restructuring, a financial advisor representing the company to be restructured may be compensated on the basis of a percentage of certain financial benchmarks relating to the resulting transaction.

DLJ submitted comparative data directed towards the reasonableness of its fee viewed as a percentage of two of these financial benchmarks. First, DLJ listed 32 other domestic transactions having a value between two hundred and five hundred million dollars, and during the period of January 1, 1992 through November 28, 1995. In those transactions, the fee payable to the financial advisor, as a percentage of the transaction value,

---

1. The $2,710,000 figure is the sum of the unpaid amount of $2,110,000.00 and the prior post-petition payments of $600,000. Moreover, while the $900,000.00 amount is not specifically subject to Court review, because of the structure of DLJ's requested compensation, this amount is relevant to the reasonableness of the additional amount of which DLJ is now seeking approval.

2. The last quoted factor appears to reflect some of the holdings of *Busy Beaver*.

3. HLHZ did not challenge the assertions contained in the application or those made at the October 2 hearing.

ranged from .5% to 1.5%, and averaged .9%. The stock purchase agreement here had a transaction value of about $345 million. DLJ's fee of $3.75 million, as a percentage of that value, is approximately 1%.

DLJ also listed 31 restructurings involving securities of accreted value ranging from $102 million to $2.5 billion, and during the period of March 1990 through the second quarter of 1995. In those transactions, the average fee paid was about 1.09% of the transaction's accreted security value. UDC's restructuring involves securities having an accreted value of approximately $500 million. DLJ's fee, as a percentage of that value, is approximately .72%.

Thus, applying two separate benchmarks relating to the reasonableness of the requested restructuring fee, the fee is consistent with the industry average over the past five years. The requested restructuring fee complies with the standards set forth in the *Busy Beaver* decision and section 330(a), and is reasonable. DLJ's compensation request of $2,710,000.00 will be approved.

III. *Discussion of the Compensation Request of Houlihan, Lokey Howard & Zukin*

Houlihan, Lokey Howard & Zukin filed an application seeking compensation of $125,000.00 and reimbursement of expenses of $3,137.19 for services performed from May 17, 1995 through June 30, 1995; and an application seeking compensation of $225,000.00 and reimbursement of expenses of $7,418.69 for services performed from July 5, 1995 through September 30, 1995. Docket nos. 630 & 745. Neither of these applications discloses the mathematical basis for the compensation requests, however, the Court surmises that HLHZ was originally seeking $50,000.00 for May 17 through May 31, and $75,000.00 for each of the months of June,

July, August and September. The compensation requests total $350,000.00.

Following the informal response procedures ordered by this Court, the fee auditor recommended about $18,000.00 in fee reductions. At the October 2 hearing, HLHZ announced that it had agreed to the reductions, and asked the Court to approve the following reduced requests:

1. Compensation of $119,500.00 and reimbursement of expenses of $3,137.19 for services performed from May 17, 1995 through June 30, 1995; and

2. Compensation of $212,999.31 and reimbursement of expenses of $7,418.69 for services performed from July 5, 1995 through September 30, 1995.

As to the expense request contained in each application, HLHZ has satisfied its burden under 11 U.S.C. § 330(a)(1)(B), and the total amount of $10,555.88 will be approved. The remainder of the discussion in this section addresses the compensation request.

HLHZ submitted timesheets for all work performed on the UDC case. HLHZ worked for 41.9 hours in May, 120.5 hours in June, 315.2 hours in July, 225.7 hours in August, and 22.5 hours in September. This totals 704.7 hours,[4] for a blended rate of $471.83 per hour based upon the total request of $332,499.31.

■ Given these underlying facts, the Court's obligation is to determine whether the request for compensation is "reasonable compensation for actual, necessary services." For the reasons stated below, the Court finds that the compensation request is not reasonable.

A. *Whether the Services Performed Were Necessary or Beneficial*

The applications state that during the bankruptcy, HLHZ provided services related to the following:

4. HLHZ has informally suggested that this total may underestimate the actual time spent on the case due to "administrative limitations." Docket no. 849, Exhibit 6, January 17, 1996 letter from Michael D. Stewart to Michael G. Donohoe, page 3. HLHZ never explained at the time of its employment application or subsequently what these limitations were, and the Court has difficulty in conceiving of limitations that would justify a financial advisor from disclosing the full amount of time it worked during a Chapter 11 case. Indeed, in a fee application HLHZ filed in this Court three years ago, HLHZ was able to fully itemize its time. *In re AMI*, Case No. 93–582, docket no. 584. Every other financial advisor in this case and in other Chapter 11 cases has also been able to present its actual time to the Court, as required by Order No. 27.

1. Formation of the official equity committee;
2. Financial analyses;
3. Review and study of all available documents relating to the finances of UDC, comparable companies, and the relevant home-building industry.
4. Analysis of the AEW and DMB investment proposals.
5. Analysis of the securities to be issued.
6. Determination of the enterprise value of UDC.
7. Development and analysis of potential alternative reorganizations.

HLHZ does not explain how any of these activities benefited the completion of the UDC case, *see* § 330(a)(3)(A)(C), except for a conclusory statement that the services "have been substantial and necessary in this Chapter 11 Case." Docket no. 630, ¶ 17.

In light of the uncontroverted leading role of DLJ pre-petition and post-petition, *supra* section II.A., and pre-planned nature of UDC's bankruptcy, the Court cannot agree that all of HLHZ's activities benefited the estate or were necessary.

B. *Consideration of the Rates Charged for such Services, and Whether the Compensation Requested is Reasonable Based Upon Customary Compensation Charged by Comparable Financial Advisors in Non–Bankruptcy Cases.*

The applications are based upon a monthly fee of $75,000.00. Unlike DLJ, HLHZ did not in its application submit any comparative data as to how, outside of bankruptcy, financial advisors are compensated when they serve ad hoc or informal equity committees, and in the pre-planned circumstances that were present here.

Assuming that a monthly rate would be utilized, and that a monthly rate of $75,000.00 is within the range normally paid to a comparable financial advisory firm outside of bankruptcy, and in the circumstances here, HLHZ has also failed to present any argu-

ment why this rate would be considered reasonable for the months of May and September in light of the minimal work performed in those months. The blended rate for those months is $1,119.32 per hour and $3,333.33 per hour, respectively.[5]

HLHZ has stated in its applications that it infrequently, but occasionally bills on an hourly basis, and when it does, uses the following rates for the professionals who worked in the UDC case:

1. David A. Preiser—Managing Director, $500/hour;
2. Cary J. Stanford—Managing Director, $500/hour;
3. Michael D. Stewart—Senior Associate, $275/hour; and
4. Brett Fliegler—Financial Analyst, $200/hour.

Docket no. 630 at 5. Assuming for the moment that *these* asserted rates are themselves reasonable, and that all the time entries passed scrutiny, the blended rate would be $324.50 per hour and the total compensation would be about $235,000.00, about $97,000.00 less than the compensation actually requested.

C. *Whether the Services Performed Were Commensurate With the Complexity, Importance, and Nature of the Problem, Issue, or Task Addressed.*

HLHZ did not discuss subsection (A) or (D) of section 330(a)(1)(A). Consideration of subsection (D) both qualitatively and quantitatively highlights the excessive size of the compensation request compared to any benefit.

Qualitatively, much of the professional work that typically occurs during a Chapter 11 case was completed here pre-petition. The DMB transaction (which in turn related to the once-contemplated AEW transaction) was negotiated pre-petition between UDC, DMB, and a group of major creditors (and their respective advisors). By May 17, 1995, the parties had already structured creditor

---

5. The May rate was computed by dividing $50,000.00 by the total number of hours itemized in May (41.9 hours). The September rate was computed by dividing $75,000.00 by the total number of hours itemized in September (22.5 hours).

and equity classes, and negotiated the terms of a plan of reorganization.

Quantitatively, even assuming the $3,000,000.00 trust represents a $3,000,000.00 benefit to the estate, the already approved fees and expenses for the professional persons other than HLHZ representing the equity committee exceeds 12% of that benefit. If the requested compensation and expenses of HLHZ was approved, that percentage would increase to 24.3% of the purported benefit. This is too high.

On this record, HLHZ's applications are inadequate to show that its request of $332,499.31 is reasonable under the standards of section 330(a).

### D. HLHZ is Allowed $230,000.00 in Compensation

■ When an application is inadequate, a fee applicant may be entitled to an opportunity to supplement that application. *Busy Beaver*, 19 F.3d 833, 846, 847. In the *Busy Beaver* case, however, the applicant was given no notice of the Court's concerns. Here, after HLHZ filed its application, the fee auditor issued a report concerning the application. Docket no. 849, Exhibit 6. This report raised many of the same concerns discussed in this Opinion.[6] HLHZ responded to the concerns raised in the report. Docket no. 849, January 17, 1996 letter of Michael Stewart to Michael G. Donohoe. That response has been considered.

■ Moreover, to be entitled to supplement the record, the applicant must have attempted in good faith to comply with the applicable law and rules governing the format and substance of a fee application. *Busy Beaver*, 19 F.3d 833, 846, 847. For the reasons explained in Addendum A, the Court finds HLHZ did not file the application in good faith, and HLHZ will not be allowed to supplement the record. Reasonable compen-

sation will be determined based upon the present and closed record.

In determining what is reasonable compensation, for the reasons previously stated, there is insufficient evidence to apply the monthly billing rate of $75,000.00. Instead, the Court will start by utilizing hourly rates for HLHZ's professionals. HLHZ agrees it occasionally uses this compensation method, HLHZ has used this method in this Court in the past, and this method will more properly value the work performed in the May and September months. Initially, the Court will utilize those hourly rates stated in HLHZ's applications.

If these rates were applied to all the time entries submitted in the application, a compensation amount of $235,535.00 would result. However, these hourly rates are not appropriate to use, as HLHZ states those rates are "designed to fairly compensate the firm for its work *and to cover fixed and routine overhead expenses.*" Docket no. 407 at 9. HLHZ made no showing that its fixed and routine overhead expenses should be allowed as a component of compensation under section 330(a). *See Busy Beaver*, 19 F.3d at 852 n. 27, 856.

Moreover, it is not appropriate to apply an hourly rate to the full amount of the time entries submitted in the application. In its report, the fee auditor observed, "the time detail is replete with entries with inadequate detail," docket no. 849, exhibit 6 at 4, and the fee auditor attached copies of those entries to which the report was referring. In response, HLHZ submitted to the fee auditor revised time entries for those that were questioned. Some of those revised entries remain inadequate.[7]

■ It is not the Court's responsibility to "pin down to the nearest dollar the precise fee to which the professional is ideally entitled," *Busy Beaver*, 19 F.3d at 845, but only to determine reasonable compensation. For

---

6. *See generally* Docket no. 849, Exhibit 6 (questioning basis for HLHZ to seek any compensation prior to July 5, 1996, questioning reasonableness of fees charged for May and September, comparing compensation based upon monthly rate to compensation based upon hourly rates, listing technically deficient time entries).

7. For instance, a revised June 7, 1995 entry by David A. Preiser bills 1.8 hours for: "Telephone call with MDS & CN." This entry has no subject matter in violation of Order 27, and is impossible to evaluate for reasonableness, either by itself or in connection with other time entries.

the reasons stated above, a reduction from HLHZ's hourly rates and a reduction of the billable time is appropriate. Based upon the record in this case, the Court finds $230,-000.00 (which reflects a small reduction from the $235,535.00 figure) represents reasonable compensation.

## IV. *Conclusion*

Addendum A, and an Order approving the fee and expense amounts discussed in this Opinion are attached.

## ADDENDUM A

*Addendum A to Opinion on Fee Applications of Donaldson, Lufkin & Jenrette Securities Corporation and Houlihan Lokey Howard & Zukin.*

The *Busy Beaver* decision requires HLHZ to comply with the requirements of § 330(a) and the applicable rules. 19 F.3d at 847. Under the following circumstances, the Court determines that HLHZ did not make a good faith effort to comply with these requirements and rules. *Id.* at 846, 847.

As outlined above in sections III.A., B., and C., the application does not even attempt to address the Bankruptcy Code factors this Court must consider before finding that the compensation satisfies section 330, or detail to support its conclusory statement that its activities were substantial and necessary in this Chapter 11 case.

The application contained an alternative compensation structure that would result in fees $97,000 less than the requested amount, yet the application did not explain why the Court should award the higher of the two amounts.

Order No. 27 of the Local Rules of the United States Bankruptcy Court for the District of Delaware is entitled "In Re: Contents of Application for Compensation and Expenses," and has been in effect since September 1993. That Rule includes informational and detail requirements for each time entry, and requires that the application state whether the time entries comply with those requirements (hereinafter, "the compliance statement"). This Court put HLHZ on specific and actual notice of the requirements of Order No. 27 of the Local Rules of the United States Bankruptcy Court for the District of Delaware. Docket no. 407B at 2. Despite this notice, HLHZ's application failed to include the required compliance statement.

At the end of August 1995, David Preiser billed time for "prepar[ing] hourly billing detail for fee application," docket no. 745, suggesting that time entries were prepared retroactively rather than reasonably contemporaneously.

HLHZ represented itself to have extensive experience as a financial advisor in several Chapter 11 cases, docket no. 407, and indeed, HLHZ has previously served as a financial advisor in at least one Chapter 11 case before this Court. It is fully familiar with what is required of it in connection with a compensation application.

Finally, HLHZ's application is in stark contrast to the thorough application submitted by DLJ.

## ORDER

AND NOW, December 6, 1996, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. Compensation for Donaldson, Lufkin & Jenrette Securities Corporation during the Chapter 11 case of UDC Homes, Inc. is **APPROVED** in the amount of $2,710,000.00. Compensation for Houlihan Lokey Howard & Zukin during the Chapter 11 case of UDC Homes, Inc. is **APPROVED** in the amount of $230,000.00. All other requests for compensation by either Donaldson, Lufkin & Jenrette Securities Corporation or Houlihan Lokey Howard & Zukin are **DENIED** with prejudice.

2. The request of Donaldson, Lufkin & Jenrette Securities Corporation for reimbursement of expenses of $4,924.00 is **APPROVED**. The request of Houlihan Lokey Howard & Zukin for reimbursement of expenses of $10,555.88 is **APPROVED**.

3. No execution shall issue upon this order nor shall proceedings be taken for

227

its enforcement, until the expiration of 10 days after its entry.