**In re BURLINGTON MOTOR HOLD-INGS, INC., Burlington Motor Carriers, Inc., Spirit Transportation, Inc., BNMC Real Estate, Inc., and BMC Equipment, Inc.**

Bankruptcy Nos. 95–1559(HSB) to 95–1563(HSB).

United States Bankruptcy Court, D. Delaware.

Dec. 4, 1997.

Order Denying Reconsideration Jan. 13, 1998.

Adam Landis, Duane, Morris & Heckscher, Wilmington, DE, for Duff & Phelps.

**HELEN S. BALICK, Chief Judge.**

This is the court's Opinion on various applications for allowance of compensation and reimbursement of expenses (the fee applications). These are core matters. 28 U.S.C. § 157(b)(2)(A) & (B).

## I. *Procedural Background*

A fee auditor was employed in this case. With respect to the applications discussed below, the fee auditor recommended approval of the applications at amounts that represented either no reduction from the amounts requested, or insignificant reductions from those amounts. The resulting fee and expense numbers were noticed for a hearing. One objection was filed. A hearing on the applications was held on November 6, 1997.

At the outset of that hearing, this court noted its view that the amounts sought seemed large, and that some of the applications did not comply with the applicable law and local rules concerning fee applications. No evidentiary presentations were made. The applicants relied upon certain attached affidavits, and oral argument.

## II. *Discussion*

Duff & Phelps Securities Co. (D & P) filed an application for one million dollars. The Official Committee of Unsecured Creditors objects to this application, and argues that D & P is entitled to no compensation.

D & P performed financial advisory and related services. It was not retained pursuant to section 327(a) of Title 11 and is not seeking compensation pursuant to section 330 of Title 11. Instead, D & P relies upon section 1129(a)(4) of Title 11, and a November 21, 1996 letter agreement. The letter agreement is between D & P and BMCI, as successor to the debtor Burlington Motor Holdings under the fourth amended joint plan of reorganization. In that letter, BMCI promises to pay D & P one million dollars in satisfaction of any claims of D & P against the debtor. Section 1129(a)(4) of Title 11 states:

§ 1129. Confirmation of plan.

(a) The court shall confirm a plan only if all of the following requirements are met:

* * *

(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

In short, D & P argues the one million dollar request is "reasonable" for services rendered, and costs and expenses incurred.

In its objection, the Creditor's Committee emphasizes that D & P's compensation was initially negotiated in the context of the third amended plan of reorganization, and was contingent upon the confirmation and consummation of that plan. This plan failed to receive sufficient financing, and was not confirmed. The Committee further asserts that in the time period between the financing problem of the third plan and the confirmation of the fourth amended joint plan, D & P performed minimal additional work. That plan was confirmed on November 22, 1996, and became effective on December 18, 1996. The Committee concludes that D & P is entitled to no compensation.

D & P was responsible in part, but not in whole, for procuring the funding for the fourth amended plan. The record does not support the Committee's factual assertions to the extent necessary to warrant this court denying all the payments requested by D & P, and to that extent, the objection is overruled.

However, the Committee's objection alternatively argues that even if some award to D & P is reasonable, the amount should be far less than one million dollars. This alternative argument will be discussed in conjunction with the discussion of the work of the two other professionals performing financial advisory services in these administratively consolidated cases.

Those two other professionals are Alex. Brown & Sons Inc., and Chanin and Company. Chanin was employed pursuant to 11

U.S.C. § 327(a) as the financial advisor to the Official Committee of Unsecured Creditors. Chanin seeks approval of $630,000.00 in fees and reimbursement of $23,807.17 in expenses, for the time period December 20, 1995 through November 22, 1996. Alex. Brown was employed pursuant to 11 U.S.C. § 327(a) as the debtor's financial advisor and investment banker. Alex. Brown seeks approval of $838,709.60 in fees and reimbursement of $38,453.92 in expenses, for the time period December 4, 1995 through December 18, 1996. Both of these financial advisors seek approval on the basis of a monthly rate of compensation.

Alex. Brown worked at a flat rate of $75,-000.00 per month. In July of 1996, Alex. Brown reduced its monthly rate from $75,-000.00 to $50,000.00, and billed at this rate for the months of July, August, September and October. In November 1996, after the third plan failed to receive sufficient funding, Alex. Brown billed again at $75,000.00 per month. The fee audit report contains a letter from the managing director of Alex. Brown which provides a detailed explanation of the reasons for this fluctuation in monthly rates. According to Alex. Brown, in July the debtors had selected a purchaser for the assets of Burlington. The purchaser, with its own management team, would be responsible for operating the business of the debtors until it could raise the financing necessary to complete the acquisition pursuant to a plan of reorganization. During this time, Alex. Brown unilaterally reduced its monthly rate to improve the debtors' liquidity, and in recognition that the debtors' need for its services would be reduced. When the deal underlying the third amended plan fell through, Burlington instructed Alex. Brown to find a new acquiror. Alex. Brown's involvement increased to a level comparable to its pre-July 1996 efforts, and it resumed billing at the $75,000.00 monthly rate. The court appreciates the integrity of a financial advisory firm that willingly reduces its rate in an attempt to reflect the reduced level of work it is performing.

Indeed, this court has previously questioned the appropriateness of applying an out-of-court market monthly rate of compensation to a financial advisor employed in a Chapter 11 case. *In re Columbia Gas,* 91–803, docket no. 368, at 87–89. The Chapter 11 reorganization process includes circumstances not present in an out-of-court restructuring, and delays may occur in a Chapter 11 restructuring due to the intransigence of certain parties-in interest, rulings from the bankruptcy court or other courts, and other legal and business circumstances. These delays increase the overall amount of payments to each of the employed financial advisors compensated on the basis of a monthly rate, without necessarily conferring a demonstrable and comparable increase in the benefit upon the estate by each of those financial advisors.

Chanin billed the estate at the rate of $60,000.00 per month, with the exception of October, 1996. During that month, Chanin billed only $30,000.00. Chanin asserted, and the fee auditor accepted that the $60,000.00 monthly rate was reasonable merely because similar rates had been charged on behalf of other clients for similar services in other Chapter 11 cases.[1] Assuming that those other client representations are factually comparable, and that the monthly rates in those other cases were finally approved,[2] Chanin's reasoning is not persuasive, as it fails to address the work actually done by the financial advisor, and whether that work merits a rate of $60,000.00. By analogy, the rate of $220.00 per hour may be reasonable for a partner practicing bankruptcy law in Wilmington, but if that partner is billing the

---

1. The fee auditor attached to its final Chanin report a letter dated March 11, 1997 from Skip Victor on behalf of Chanin responding to the fee auditor's initial report. The response listed many examples of monthly rates that Chanin and other financial advisors had billed in other restructurings or Chapter 11 cases.

2. Mr. Victor's letter response stated that Chanin was compensated at the rate of $65,000.00 per

month in representing the Creditor's Committee in the Anacomp Chapter 11 case. That Chapter 11 case was before this court, and the monthly rate was $60,000.00. Moreover, the reasonableness of the $750,000.00 in fees sought by Chanin was questioned. Case no. 96–16, docket no. 570. Ultimately, Chanin agreed to an amount of compensation $200,000.00 less than it had requested. Docket nos. 599 & 605.

estate for work that could be performed by, for example, a first year associate or paralegal, then the partner will not be allowed to charge full rate for that particular work. *See In re Busy Beaver,* 19 F.3d 833, 848, 851–52, 855 (3d Cir.1994). In reference to the monthly reduction taken by Alex. Brown, if Chanin had taken a comparable reduction for the months of July, August, and September, its overall request for fees would be $570,-000.00, not $630,000.00.[3]

In reference to the information required by the applicable Local Rules for the United States Bankruptcy Court for the District of Delaware, and the information required by Attachment A to the order employing the fee auditor, docket no. 199,[4] there were pervasive problems with the applications of both Chanin and Alex. Brown. The tasks described in Chanin's time entries were lumped. Some of the time entries lacked sufficient detail. Indeed, Chanin admitted that its time entries did not comply with Local Order Number 27. The fee application of Alex. Brown also lumped tasks and provided insufficient detail in describing the work performed. Alex. Brown did not state whether it believed the time records of the three professionals primarily involved in this project complied with Local Order No. 27.

Taking a closer look at the numbers underlying Chanin's application, the court calculates that Chanin's professionals billed a total of 1263 hours during the application period for a blended hourly rate of about $499.00. The professionals that worked on this case ranged from Managing Director to Financial Analyst. The fee auditor performed a sample analysis comparing the billed monthly fee of $60,000.00 with the amount that would have been billed had the professionals billed by the hour. The fee auditor applied the hourly rates of $500.00 (managing director), $400.00 (senior vice-president), $275.00 (senior analyst), and $200.00 (analyst). While the fee auditor thought these rates seemed high, they were chosen so as to be fair to Chanin in engaging in the sample comparison. The fee auditor performed this comparison for the months of September, October, and November, utilizing the hours billed as listed in the application, and assuming those hours to be fully justified. The analysis showed that the estate would have been billed $76,000.00 less during this three-month period based upon the hourly rates as opposed to the monthly rate. This court has previously used a finding that the hourly rate resulted in a substantially lower amount of compensation than the amount computed using monthly rates as a basis for reducing fees. *In re UDC Homes,* 203 B.R. 218, 224–26 (Bankr. D.Del.1996).

Taking a closer look at the numbers underlying the application of Alex. Brown, the court believes there is a mathematical error in the calculation of the amount of compensation Alex. Brown requested. According to the monthly rates stated in the application, Alex. Brown is seeking $833,870.97, not $838,709.60 as stated in the application.[5] This lower amount will be considered.

In reference to the benefit to the estate provided by these two applicants, undoubtedly each provided substantial services to its respective client that is worthy of some level of compensation. Beyond that, the record is disputed. Chanin repeatedly asserted it was integrally involved in bringing the ultimate bid to the table. However, Alex. Brown also asserted that it was integral to the successful

---

3. The Alex. Brown reduction is about 33% of its monthly rate. The same percentage reduction applied to Chanin's rate of $60,000.00 results in a monthly rate of $40,000.00, a reduction of $20,000.00 per month.

4. Of relevance here. Attachment A required information substantially the same as that required by paragraph IV(1) of Local Rule 32 (description of each billing participant's role at intraoffice conferences).

5. Using December 4 as the starting point, Alex. Brown billed for eight months at the rate of $75,000.00, a total of $600,000.00. Alex. Brown also billed for four months at the rate of $50,-000.00, a total of $200,000.00. In December 1996, Alex. Brown billed for the period from the fourth to the eighteenth (the effective date) at the rate of $75,000.00. This stub period of 14 days is pro-rated against the 31 days in the month and results in additional compensation of $33,870.97. These three amounts total $833,870.97. The Court verified these calculations with the managing director of Alex. Brown. The fee auditor did not notice this mathematical error.

reorganization of the Burlington cases. Both assertions were without corroboration from a disinterested third party. *See In re Days Inn,* 161 B.R. 11, 15–16 (Bankr.D.Del.1993).

At this point, the court must recognize the related assertions of D & P on the issue of who was responsible for the successful reorganization. D & P asserted absent *its* efforts in connection with the third amended plan, it is extremely unlikely that there would have been a successful fourth amended plan. Docket no. 1170 at 3. In summary, each of the three entities claim responsibility for reorganization. These conflicting claims also suggest that reductions in the applications of Chanin and Alex. Brown are warranted.

In reference to the merits of D & P's request for one million dollars, the Creditors' Committee does not dispute the reasonableness standard of section 1129(a)(4), and the court shall utilize that standard. D & P refers to discussion of the reasonableness standard in King, 7 *Collier on Bankruptcy,* ¶ 1129.03[4] at 1129–38–39 (15th ed. rev. 1997). That discussion appropriately asks the question whether reasonableness should be measured "in relation to other costs of the particular case, reasonable in relation to other similar case [sic], or reasonable in relation to the fee structure of the entity requesting payment?" The discussion then states that if the fee is reasonable under any of these inquiries, then the fee should be approved. No decision has been cited wherein a court adopted that disjunctive reasoning. This court will not adopt that standard, which suggests that the court should ignore relevant information concerning the reasonableness of the payment.

Moreover, critical to the reasoning of the Collier treatise is that a substantial fee request will have been adequately and timely disclosed, so that, among other things, creditors will have had the opportunity to factor the fee into their decision whether to accept or reject the plan. *Id.* D & P has not pointed to any such disclosure here. The date of the letter agreement, November 21, was only one day before the confirmation hearing. In determining a reasonable payment for D & P, the court will consider all relevant circumstances, whether or not discussed in the Collier treatise.

D & P argues that one million dollars is reasonable because that amount is less than one percent of the transaction value of the restructuring. That comparison of this percentage to other transactions, however, fails to properly acknowledge the role of D & P in these Chapter 11 cases, and the role of the other financial advisors and *their* requested compensation, as discussed above.

Moreover, the reasonableness of D & P's request should also be measured against the consideration for the million dollars: The payment is in lieu of any claims of D & P against the debtor. The letter agreement does not say what those claims might be, but a professional such as D & P seeking court approval for compensation for services rendered to the estate would have to file an application pursuant to 11 U.S.C. § 503(b) and prove substantial contribution. Thus, another perspective on the reasonableness of D & P's payment request is the amount it would be entitled to pursuant to a substantial contribution application for work performed during the Chapter 11 case.

Also pending before the court are two fee applications of law firms. Dewey Ballantine applies for approval of compensation in the amount of $2,049,434.50 and expenses in the amount of $207,760.87 for the time period December 4, 1995 through November 22, 1996. Stroock & Stroock & Lavan applies for approval of compensation in the amount of $494,101.50 and expenses in the amount of $34,765.77 for the time period December 20, 1995 through November 22, 1996,

The time entries of the Dewey firm are replete with redacted entries. No order was obtained from this court allowing the Dewey firm to redact entries. The fee auditor noted the redactions in its initial report. In response, the Dewey firm stated that it believed the redacted entries were necessary to protect confidential matters. Dewey provided unredacted versions of these entries to the fee auditor, yet never filed the unredacted entries with the court. Nonetheless, Dewey represented to the court that its en-

tries were "detailed and exhaustive." Docket no. 546 at 10.

Another matter relating to Dewey's fee application is the so-called "sur-reply" brief prepared and filed by the firm on behalf of the debtor in connection with the motion of Stoughton Trailers to assume or reject equipment leases. Docket no. 446. An amended scheduling order on the motion allowed for a response from Burlington, and then a reply from Stoughton. Docket no. 322. The order did not allow for the sur-reply. Stoughton raised this matter to the court during the litigation of the contested matter. The court required the Dewey firm to separately designate any time billed in its application relating to the sur-reply for which the Dewey firm sought approval. Docket no. 511 at 167–68. Dewey eventually sought approval of $9,424.00 in connection with the preparation of the sur-reply, representing one-half of the amount billed for preparing this 19 page document. Docket no. 546 at 12–14. Dewey has attempted to justify the filing of the sur-reply three times: In the sur-reply itself (footnote three); in its response to the fee auditor; and in its fee application. The court finds all these arguments to be without merit.

Finally, in connection with Dewey's fee application, the court considers the compensation requested in connection with the motion to establish alternative dispute resolution procedures for liquidation of bodily injury and property damage claims. Docket no. 716. The relief this motion requested engendered many objections. Many of those objections should have been foreseen, and should have been accommodated in the original drafting of the motion. Indeed, the debtor eventually filed an amended motion. Docket no. 896. The court finds that the time spent on the original motion was not reasonable and necessary in light of the benefit to the estate.

With respect to the Stroock application, the blended rate for the Stroock application was about $278.00 per hour. Also, the time entries include many intraoffice conferences not described in accordance with the requirements concerning such conferences. Rule 27, Local Rules for the United States Bankruptcy Court for the District of Delaware; docket no. 199, Attachment A. In Stroock's defense, however, the amount of compensation is only about one-quarter of that requested by Dewey.

With respect to all five applications under review, there are other factors the court must keep in mind. Under a liquidation scenario, unsecured creditors would have received no distribution, and administrative expenses would have received only a partial distribution. The fourth amended plan was centered upon a transaction that Alex. Brown valued at $120 million, and allowed for a total distribution to unsecured creditors of about $10,000,000.00. According to one Chapter 7 liquidation analysis, unsecured claims totaled about $176,000,000.00. Docket no. 521 at Exhibit 6. The payout requested in the aggregate for the work of Chanin, Alex. Brown, and D & P is $2,408,374.60 in fees, and $122,596.09 in expenses, a total of $2,530,970.69. This equals about 25% of the distribution to unsecured creditors. The fees and expenses sought by the five professionals aggregate about $5,120,734.00, about 50% of the distribution to unsecured creditors.

It is not the court's responsibility to pin down to the nearest dollar the precise fee to which a professional is ideally entitled, but only to determine reasonable compensation. Upon consideration of all the circumstances discussed in this Letter Opinion, the application of Alex. Brown & Sons Inc. is approved in the amount of $800,000.00 in fees, and $38,453.92 in expenses; the application of Chanin and Company is approved in the amount of $515,000.00 in fees, and $23,807.17 in expenses; the application of Duff & Phelps Securities Company is approved in the amount of $500,000.00; the application of Dewey Ballantine is approved in the amount of $1,924,434.50 in fees, and $207,760.87 in expenses; and the application of Stroock & Stroock & Lavan is approved in the amount of $480,101.00 in fees, and $34,765.77 in expenses. *In re Busy Beaver,* 19 F.3d 833, 846–48 (3d Cir.1994); *In re UDC Homes,* 203 B.R. 218, 226 (Bankr.D.Del.1996).

### III. *Conclusion*

A judgment and order in accordance with this Letter Opinion is attached.

# 718

## ORDER

■ AND NOW, January 13, 1998, the court FINDS and ORDERS that:

1. On December 5, 1997, a letter opinion, and a judgment and order of this court were entered on the docket. Docket no. 1248. The order, among other things, ruled upon the final fee application of Chanin and Company. On December 15, the tenth day after the entry of the judgment on Chanin's fees, Chanin and Company filed a document entitled "Motion for a Rehearing." Docket no. 1258. By a December 24 order of this court, that motion was stricken. Docket no. 1262.

2. Thereafter, on December 29, 1997, Chanin and Company filed a document entitled "Motion For Reconsideration" ("the reconsideration motion"). Docket no. 1263.

3. The reconsideration motion states in its opening paragraph that Chanin "moves pursuant to section 502(j) of Title 11 of the United States Code (the 'Bankruptcy Code') and Federal Rules of Bankruptcy Procedure 3008, 9023 and 9024 for reconsideration of the Court's December 4, 1997 Judgment and Order reducing the fees of Chanin from $630,000.00 to $515,000.00." This is the only reference in the reconsideration motion to Bankruptcy Code section 502(j), and to Bankruptcy Rules 3008, 9023 and 9024. The remainder of the reconsideration motion (10 pages) addresses the substantive issue of Chanin's fees.

4. The merits of Chanin's reliance upon section 502(j), and Federal Rules of Bankruptcy Procedure 3008 and 9024 will be considered together. Bankruptcy Code section 502(j) states: A claim that has been allowed or disallowed may be reconsidered for cause. Bankruptcy Rule 3008, entitled "Reconsideration of Claims," states:

A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

The court will assume without deciding that Chanin's fees are "a claim against the estate," and that Rule 3008 could be used by Chanin to ask this court to reconsider the December 5 order.[1]

5. Bankruptcy Rule 9024, entitled "Relief from Judgment or Order," states:

Rule 60 F.R.Civ.P. applies in cases under the Code except that:

(1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b).

6. In connection with section 502(j), Rule 3008, and Rule 9024, and as stated in paragraph 3 above, Chanin has not discussed the code section, either of the Bankruptcy Rules, or Rule 60 F.R.Civ.P. in its reconsideration motion. Chanin has not articulated a standard for the court to apply in determining whether this court should reconsider the claim (as opposed to the substantive evaluation of the merits of the claim). Similarly, Chanin has not argued why such a standard has been satisfied to allow this court to reconsider the claim, or to allow this court to provide relief from judgment or order. Therefore, Chanin's reconsideration motion, to the extent it relies upon section 502(j), Bankruptcy Rule 3008, and Bankruptcy Rule 9024 is without merit on its face and is **DENIED**. *E.g., Matter of Colley*, 814 F.2d 1008, 1010 (5th Cir.1987) (lower court did not abuse discretion in denying motion for reconsideration where movant did not

---

1. The record indicates that the fees are not being paid from the estate, and are instead being paid by the successor corporation, Burlington Motor Carriers, Inc. Docket no. 1226 (transcript of hearing on fee applications) at 31–32, 51–52. Also, the citation to section 502(j) and Rule 3008 could be construed as a attempt by Chanin to circumvent the expiration of the appeal period. *In re Carib–Inn of San Juan Corp.*, 130 B.R. 6, 7 (Bankr.D.Puerto Rico 1991) (Votolato, J., sitting by designation).

cite any specific Rule 60(b) ground, or even generally assert cause for reconsideration under section 502(j), and thus "did not even get his foot in the door"). *See also In re United Merchants and Manufacturers,* Case nos. 90–827–829, 1992 WL 37498, at \*1 (Bankr.D.Del. February 18, 1992) (failure to state standards for motion for reconsideration under Bankruptcy Rule 9023 sufficient ground to deny the motion).

7. The last rule cited by Chanin is Bankruptcy Rule 9023. Bankruptcy Rule 9023 states: "Rule 59 F.R.Civ.P. applies in cases under the Code, except as provided in Rule 3008." Rule 59 is entitled "New Trials; Amendment of Judgments," and states:

(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues

\* \* \*

(2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

(b) Time for Motion. Any motion for a new trial must be filed no later than 10 days after entry of the judgment.

\* \* \*

(d) On Court's Initiative; Notice; Specifying Grounds. No later than 10 days after entry of judgment the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. When granting a new trial on its own initiative or for a reason not stated in a motion, the court must specify the grounds in its order.

(e) Motion to Alter or Amend a Judgment. Any motion to alter or amend a judgment must be filed no later than 10 days after entry of the judgment.

Rule 59, and hence Bankruptcy Rule 9023, contains a repeated requirement that a motion under this Rule must be filed "no later than 10 days after entry of judgment."

8. Chanin filed the reconsideration motion on December 29, 1997. The order to which it refers was entered on the court's docket on December 5, 1997. Docket no. 1248. The reconsideration motion was thus filed more than 10 days after entry of judgment, and is not timely to the extent it relies upon Rule 9023.

9. The reconsideration motion, docket no. 1263, is therefore **DENIED.**